**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALLSTATE PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1193 |
| | ) | |
| **CHARLENE WINSLOW, THOMAS E.** | ) | |
| **WINSLOW and THOMAS M.** | ) | |
| **WINSLOW,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

In this action, Allstate Property and Casualty Insurance Company ("Allstate")

asks this court to enter an order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201

and 2202, finding that it does not owe a duty to defend or a duty to indemnify to Charlene

Winslow ("Mrs. Winslow"), Thomas E. Winslow ("Mr. Winslow"), or Thomas M. Winslow

("Tommy Winslow") (collectively, the "Winslows") with respect to any legal claims asserted

against them by Paul Kahan ("Kahan") in two underlying actions. Allstate and the Winslows

filed cross-motions for summary judgment in which each party argues that Pennsylvania law

dictates that judgment be entered in its favor. (ECF Nos. 18, 22.) Allstate filed a motion to

strike the request made by the Winslows in their summary judgment papers for reimbursement of

previously-incurred defense costs. (ECF No. 29.)

For the reasons that follow in this memorandum opinion, the court will enter an

order declaring that Allstate has a duty to defend the Winslows, and must reimburse the

Winslows for their defense costs, whether incurred prior to the issuance of this decision, or after.

Allstate's motion to strike is, therefore, denied. The court declines to enter a final declaration with respect to Allstate's duty to indemnify at this time because such a declaration would be premature under the circumstances of this case, but notes that a conditional duty to indemnify arises from the duty to defend under Pennsylvania law.

## I.    <u>FACTUAL BACKGROUND</u>

All material facts set forth herein are undisputed unless otherwise indicated. Additional material facts may be discussed elsewhere in this memorandum opinion, in context.

Allstate issued Deluxe Plus Homeowners Policy Number 9 08 797437 to Mr. and Mrs. Winslow with a policy period of October 12, 2009 to October 12, 2010 (the "Policy"). (ECF No. 40 ¶ 3; ECF No. 41 ¶ 16.) The Policy defines "bodily injury" as:

> **"bodily injury"** – means physical harm to the body, including sickness or disease, and resulting death, except that **"bodily injury"** does not include:
> a) any venereal disease;
> b) Herpes;
> c) Acquired Immune Deficiency Syndrome (AIDS);
> d) AIDS Related Complex;
> e) Human Immunodeficiency Virus (HIV);
> or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

(ECF No. 40 ¶ 4; ECF No. 41 ¶ 18.) Coverage X of the Policy, entitled Family Liability Protection, provides that:

> Allstate will pay damages which an **insured person** becomes legally obligated to pay because of **"bodily injury"** or **property damage** arising from an occurrence to which this policy applies.

(ECF Nos. 1 & 8 ¶ 28.) **Insured person** is defined as "**you**, and if a resident of your household: a) any relative; and b) any dependent person in your care." (<u>Id.</u> ¶ 27.) Mr. and Mrs. Winlsow are named insureds on the policy. (ECF No. 1-2 at 5.) There is no factual dispute that Tommy Winslow lived at the insured property with his parents at all times relevant to this dispute.

Kahan, with whom Mrs. Winslow worked at Slippery Rock University ("SRU") and who taught Tommy Winslow while he was a student at SRU, filed two lawsuits against the Winslows. First, Kahan sued SRU, various SRU administrators, and the Winslows in this court, asserting, in seventeen separate counts, numerous violations of state and federal law (the "Federal Court Action"). (Id. ECF No. 40 ¶ 5; ECF No. 41 ¶¶ 1-2, 4-6; ECF No. 27-2.) Second, Kahan filed suit in the Court of Common Pleas of Butler County, Pennsylvania, asserting a defamation claim against Mr. Winslow (the "Butler County Action"). (ECF No. 40 ¶¶ 14-15; ECF No. 41 ¶¶ 1, 13-15; ECF No. 27-3.) Kahan's claims in both the Federal Court Action and the Butler County Action (collectively, the "Kahan Actions") arise out of SRU's decision not to renew his one-year teaching contract in March 2010, and the Winslows' conduct, occurring between December 2009 and May 2010, that purportedly lead to that decision and to criminal charges being filed against Kahan for allegedly assaulting Mrs. Winslow. There is no dispute that the claims asserted in the Kahan Actions arose during the Policy period. (ECF Nos. 1 & 8 ¶ 26.)

While both Kahan Actions were pending, Allstate filed the instant lawsuit seeking a declaration that the Policy does not impose a duty on Allstate to defend or indemnify the Winslows against either the Federal Court Action or the Butler County Action because Kahan does not assert claims that fall within the definitions of "bodily injury" or "property damage" under the Policy. (ECF No. 1 ¶¶ 33, 37; ECF No. 40 ¶¶ 1-2, 7, 16; ECF No. 41 ¶¶ 21-23.) The parties agree that Kahan asserts no claims in either Kahan Action that could possibly fall within the Policy's definition of "property damage." (ECF No. 33 at 2 n.2.) The parties disagree, however, with respect to whether Kahan asserts claims that fall within the Policy's

definition of the term "bodily injury." This question is the subject of the parties' cross-motions for summary judgment.

In the Federal Court Action, Kahan avers, in factual allegations applicable to all counts, that, as a result of the stress associated with his termination, the circumstances surrounding his termination, and the filing of baseless criminal charges against him, a) a pre-existing migraine headache condition was exacerbated to the point that he was required, for the first time in his life, to take medication, b) he suffered severe abdominal pains, and c) he developed irritable bowel syndrome. (ECF No. 27-2 ¶¶ 104-06; ECF No. 40 ¶¶ 8-9; ECF No. 41 ¶ 8.) In Count XII of the Federal Court Action, a defamation claim asserted under Pennsylvania statutory law against Mrs. Winslow and Tommy Winslow, Kahan repeats these factual allegations. (ECF No. 27-2 ¶ 250.) In his prayer for relief to Count XII, Kahan seeks to recover damages for, among other things, his "bodily injuries." (ECF No. 27-2 ¶ 254; ECF No. 41 ¶¶ 8-9.) In Count XIV of the Federal Court Action, Kahan accuses Mrs. Winslow and Mr. Winslow of intentionally interfering with his SRU teaching contract, in violation of Pennsylvania common law. (ECF No. 27-2 ¶ 262-79.) Although Kahan does not explicitly repeat the allegations about his migraine condition, abdominal pains, and irritable bowel syndrome, he incorporates by reference all prior factual allegations into Count XIV. (ECF No. 27-2 ¶¶ 104-06, 262.) Kahan does specifically aver in Count XIV that he suffered "bodily injuries" as a result of the Winslows' interference, and seeks damages for, among other things, these "bodily injuries." (ECF No. 27-2 ¶ 278-79; ECF No. 41 ¶¶ 10-11.) This court entered judgment as a matter of law against Kahan on each of the claims he asserted under federal law, and dismissed his state claims, including Counts XII and XIV, without prejudice to his right to refile then in state court. Kahan v. SRU, et al., No. 12-407, 2014 WL 4792170, at *40-41 (W.D. Pa. Sept. 24, 2014).

In the Butler County Action, Kahan alleges that, as a result of Mr. Winslow's defamation, his migraine headache condition was exacerbated, requiring medication, and that he suffered severe abdominal pains and irritable bowel syndrome. (ECF No. 27-3 ¶¶ 63-66, 82-84; ECF No. 41 ¶ 14.) He seeks to recover all damages permitted under the law. (ECF No. 27-3 ¶¶ 67, 86; ECF No. 41 ¶ 15.)

## II.     SUMMARY JUDGMENT STANDARD

"The standard for granting summary judgment in a declaratory judgment action is the same as for any other type of relief." Transguard Ins. Co. of Am. v. Hinchey, 464 F.Supp.2d 425, 429 (M.D. Pa. 2006) (citing Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Marketing Board, 298 F.3d 201, 210 n.12 (3d Cir. 2002)). Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact – that is, a fact that would affect the outcome of the suit under the governing substantive law – will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable fact-finder could resolve it in the nonmoving party's favor. Id. at 248-49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. Liberty Lobby, 477 U.S. at 255; Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility

determinations at the summary judgment stage.  <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The summary judgment inquiry asks whether there is a need for trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Liberty Lobby</u>, 477 U.S. at 250.  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable fact-finder could return a verdict for the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150–51 (2000) (citing decisions); <u>Liberty Lobby</u>, 477 U.S. at 248-49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. <u>Celotex</u>, 477 U.S. at 323; <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case. <u>Marten v. Godwin</u>, 499 F.3d 290, 295 (3d Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 325).  Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a fact-finder to decide. FED. R. CIV. P. 56(e); <u>see</u> <u>Liberty Lobby</u>, 477 U.S. at 247-48; <u>Celotex</u>, 477 U.S. at 323-25.  If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is

entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. "When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F.App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In a case where no facts are contested and what lies before the court are entirely legal questions, summary judgment on all contested issues is appropriate. Methode Electronics, Inc. v. Elco Corp., 385 F.2d 138, 139 (3d Cir. 1967) (summary judgment "is appropriate when ... only legal questions are to be resolved"). Under Pennsylvania law it is well-established that the interpretation of an insurance policy is a matter of law that may be properly resolved at summary judgment. Nationwide Mut. Ins. Co. v. Nixon, 682 A.2d 1310, 1313 (Pa. Super. Ct. 1996).

## III.  **DISCUSSION**

In the cross-motions for summary judgment the parties ask this court to decide a single legal issue: whether the Kahan Actions assert claims that fall within the definition of "bodily injury" set forth in the Policy, triggering the Policy's Family Liability Protection coverage, and thus imposing on Allstate a duty to defend and indemnify the Winslows.[1]  For the reasons set forth below, the court finds that Allstate's duty to defend is triggered, causing a

---

[1] Allstate additionally argued in its motion for summary judgment that no duty to defend or indemnify arose because Kahan accused the Winslows of "intentional acts, which are not 'occurrences'" under the terms of the Policy. (ECF No. 19 at 11-14.)  Allstate abandoned this argument in its reply brief, (ECF No. 37), after the Winslows correctly noted that Allstate's complaint for declaratory judgment did not raise this coverage defense, (ECF No. 33 at 9-11). Bell v. City of Phila., 275 F.App'x 157, 160 (3d Cir. 2008); Spence v. City of Phila., 147 F.App'x 289, 291-92 (3d Cir. 2005); Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3d Cir. 1987).  In any event, Allstate concedes that the defamation claims asserted by Kahan in both Actions constitute occurrences, (ECF No. 19 at 14), which under applicable law, would obligate Allstate to defend all claims brought against the Winslows, making Allstate's alternative coverage defense ultimately inconsequential even if it was procedurally proper.

conditional duty to indemnify to arise. Allstate must pay the Winslows' past, present, and future

defense costs until which time Allstate can establish that there is no possibility of Kahan

recovering on a covered claim. As noted, there is a conditional duty to indemnify arising from

the duty to defend, but the court must decline to enter a final declaration with respect to

Allstate's duty to indemnify at this time.

### A. **General Legal Principles**

#### 1. **Choice of Law**

A federal court exercising its diversity jurisdiction must apply the substantive law

of the forum state, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), including its choice of

law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Pennsylvania

choice of law rules, the law of the place where an insurance policy was issued and delivered

governs the interpretation of an insurance contract. Pittsburgh Bridge & Iron Works v. Liberty

Mut. Ins. Co., 444 F.2d 1286, 1288 n.2 (3d Cir. 1971). The record reflects that the Policy was

issued by an Allstate agent located in Butler, Pennsylvania, to the Winslows at the address of the

insured property, which is also located in Butler, Pennsylvania. (ECF No. 21-3 at 3-5.) Allstate

explicitly concedes in its summary judgment briefing that Pennsylvania law applies, and the

Winslows presuppose that it does. (ECF No. 19 at 2; ECF No. 28 at 5.) The Policy states that

Pennsylvania law applies, and that lawsuits related to the Policy shall be brought only in a state

or federal court located in Pennsylvania. (ECF No. 21-3 at 19.) For all these reasons, this court

applies Pennsylvania law to this action.

## 2. **Lack of Controlling Pennsylvania Law**

Where the Pennsylvania Supreme Court has not decided a particular issue, this court must predict how Pennsylvania's highest court would decide the case. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 45-46 (3d Cir. 2009). In arriving at this prediction, this court can consider decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as analogous decisions and dicta that might show how the highest court in the state would decide the issue at hand. Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008) (citing Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996)). Decisions of intermediate appellate courts of the state, while not conclusive, are particularly indicative of how the state's highest court might decide the issue and may constitute presumptive evidence of state law. McGowan v. Univ. of Scranton, 759 F.2d 287, 291 (3d Cir. 1985).

## 3. **Pennsylvania Insurance Law Principles**

Under Pennsylvania law, interpretation of an insurance contract is a question of law that is properly decided by the court. Gardner v. State Farm Fire and Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008) (citing Donegal Mut. Ins.. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)); Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 334 n.8 (3d Cir. 2005); Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997). When interpreting an insurance contract, the court must determine the intent of the parties "as manifested by the language of the written agreement." Travelers Cas. & Sur. Co. v. Castegnaro, 772 A.2d 456, 459 (Pa. 2001). In construing the language of an insurance policy, the court must give effect to the reasonable expectations of the insured. Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc., 941 A.2d 706, 717 (Pa. Super. Ct. 1998). The "reasonable expectations" doctrine is "intended to protect

against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy." UPMC Health System v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004)).  Where the language of the policy is clear and unambiguous, the court must give effect to the plain language of the agreement. Id.  When an ambiguity exists in a provision of an insurance policy, the provision must be construed in favor of the insured and against the insurer. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 163-64 (3d Cir. 2011); Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999); St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991).

      The burden of proving that a particular claim falls within the coverage of a policy is on the insured. Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (Pa. 1987). To determine whether a claim may be covered by the terms of an insurance policy, the court must compare the coverage provided by the terms of the insurance policy with the factual allegations contained in the four corners of the complaint. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr. Inc., 2 A.3d 526, 541 (Pa. 2010); Kvaerner Metals Div. of Knaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006); Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).  As with any contract, the interpretation of an insurance policy begins with the language of the policy, which must be read as a whole and construed according to its plain language. Meyer, 648 F.3d at 163.

      An insurer's duty to defend arises whenever the complaint filed by the injured party may potentially come within the policy's coverage. Air Products and Chemicals, Inc. v. Hartford Accident and Indem. Co., 25 F.3d 177, 179 (3d Cir. 1994) (citing Pennsylvania decisions); Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 226 (3d Cir. 2005) (coverage triggered

where complaint avers facts that "might support recovery under the policy"); Berg Chilling Sys., Inc. v. Hull Corp., 70 F.App'x 620, 624 (3d Cir. 2003) (noting that "Pennsylvania's courts have taken a relatively broad view in discerning whether a complaint triggers an insurer's duty to defend"); Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985). As long as the complaint "might or might not" fall within the policy's coverage, the insurance company is obligated to defend "until it can confine the claim to a recovery that the policy does not cover." Cadwallader v. New Amsterdam Cas. Co., 152 A.2d 484, 488 (Pa. 1959); Am. & Foreign Ins., 2 A.3d at 541. In making this determination, the court accepts the factual allegations of the complaint as true, but need not consider conclusory allegations, or legal labels attached to causes of action. Haver, 725 A.2d at 745; Nationwide Mut. Ins. Co. v. Garzone, Nos. 07-4767 & 08-3896, 2009 WL 2996468, at *20 (E.D. Pa. Sep. 17, 2009). Where a complaint makes at least one allegation that falls within the scope of a policy's coverage, the insurer has an obligation to defend its insured against all claims until there is no possibility of recovery for a covered claim. Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997); Cadwallader, 152 A.2d at 488; see Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). The duty to defend is not limited to meritorious actions; it even extends to actions that are "groundless, false, or fraudulent" as long as there exists the possibility that the allegations implicate coverage. Transamerica, 533 A.2d at 1368.

      An insurer's duty to defend is separate and distinct from its duty to indemnify. Jacobs Constructors, Inc. v. NPS Energy Services, Inc., 264 F.3d 365, 376 (3d Cir. 2001) (citing Transamerica, 533 A.2d at 1368). The duty to defend, however, carries with it a conditional obligation to indemnify in the event the insured is held liable for a covered claim. USX Corp. v. Adriatic Ins. Co., 99 F.Supp.2d 593, 611 (W.D. Pa. 2000). The duty to defend and the

contingent duty to indemnify both flow from a determination that the underlying complaint triggers coverage. Id. The duty to defend is, however, broader than the duty to indemnify, the latter of which only arises when the insured is found to be liable for a claim actually covered by the policy. Kvaerner, 908 A.2d at 896 n.7; Erie Ins. Exchange v. Muff, 851 A.2d 919, 925 (Pa. Super. Ct. 2004); Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (citing Am. & Foreign Ins., 2 A.3d at 540); USX Corp., 99 F.Supp.2d at 612. In a declaratory judgment action, the question is whether the insurer has a duty to indemnify the insured in the event the insured is found liabile in the underlying action. Allen, 692 A.2d at 1095.

## B. The Parties' Arguments and Authorities

Allstate contends that no duty to defend, and therefore no duty to indemnify, arises because the Kahan Actions seek recovery for purely emotional distress (Counts V, VI, VII, VII, and XV of the Federal Court Action) or for physical manifestations of emotional distress (Counts XII and XIV of the Federal Court Action and Count I of the Butler County Action), neither of which can fall within the definition of the term "bodily injury" under Pennsylvania insurance law. (ECF No. 19 at 3-11.)[2] As an initial matter, the Winslows do not dispute Allstate's contention that claims for purely emotional distress cannot qualify as bodily injury under Pennsylvania law. (ECF No. 33 at 4 n.3.) According to the Winslows, that principle, however, is not dispositive because in Counts XII and XIV of the Federal Court Action, and Count I of the Butler County action, Kahan alleges that he suffered physical ailments and conditions as a result of the Winslows' alleged misconduct, specifically a migraine headache condition that required medication, abdominal pains, and irritable bowel syndrome. (Id. at 4 n.3,

---

[2] Counts I-IV, X-XI, XII, and XVI-XVII of the Federal Court Action do not name any Individual Winslow as a defendant. Count IX was abandoned by Kahan. (ECF No. 27-2.)

3, 8.)  The Winslows contend that these physical conditions are sicknesses or diseases, which fall within the Policy's definition of the term "bodily injury." (Id. at 6.)

Allstate argues that Kahan's alleged physical ailments and conditions are no more than physical manifestations of emotional distress, which never qualify as bodily injury under Pennsylvania law. (ECF No. 19 at 8-10.)  Allstate relies primarily on three decisions to support its position that a complaint alleging only the physical manifestation of an emotional harm can never trigger insurance coverage for bodily injury in Pennsylvania: Zerr v. Erie Insurance Exchange, 667 A.2d 237 (Pa. Super. Ct. 1995); Terrafranca v. Virgin Atlantic Airways, Ltd., 151 F.3d 108 (3d Cir. 1998); and Legion Indemnity Co. v. CareState Ambulance, Inc., 152 F.Supp.2d 707 (E.D. Pa. 2001). (ECF No. 19 at 9.)  The Winlsows distinguish those three decisions, and assert that controlling Pennsylvania law is set forth in Glikman v. Progressive Casualty Insurance Co., 917 A.2d 872 (Pa. Super. Ct. 2007), as reaffirmed in Lipsky v. State Farm Mutual Automobile Insurance Co., 34 A.3d 213 (Pa. Super. Ct. 2011), aff'd, 84 A.3d 1056 (Pa. 2014). (ECF No. 33 at 7; ECF No. 28 at 8-9.)  In its reply brief, Allstate "stands by [Zerr, Terrafranca, and Legion] as precedential authority," but additionally cites Nationwide Mutual Insurance Co. v. Garzone, Nos. 07-4767 & 08-3895, 2009 WL 2996468 (E.D. Pa. Sep. 17, 2009), and Allstate Insurance Co. v. Montalbano, No. 00-3955, 2001 WL 876793 (E.D. Pa. May 17, 2001), in support of its position. (ECF No. 37 at 2, 4.)  Allstate contends that Glikman is distinguishable on its facts, and is an exception to the majority rule, and argues that if Lipsky is afforded any precedential weight by this court, Judge Ford Elliott's dissent provides the proper rationale to apply in this case. (ECF No. 31 at 7-9.)

## C.  **Analysis and Conclusion**

There is no dispute that, in Pennsylvania, if a victim claims to have suffered only psychological trauma, distress, embarrassment, and humiliation, insurance coverage is not triggered, regardless of how the term "bodily injury" is defined in the policy. The Phila. Contributorship Ins. Co. v. Shapiro, 798 A.2d 781, 787 (Pa. Super. Ct. 2002); (ECF No. 33 at 4 n.3.)  In this case, however, in addition to asserting claims for emotional distress, Kahan contends that, as a result of the Winslows' alleged misconduct, he suffered abdominal pains and irritable bowel syndrome, and required medication for a migraine headache condition for the first time in his life.  The dispositive question, therefore, is whether these latter allegations state a claim that possibly falls within the Policy's definition of the term "bodily injury," thus triggering coverage under the circumstances.  The court concludes that these allegations do qualify as "bodily injury," as that term is defined in the Policy, and that Allstate's duty to defend is therefore triggered.

Because, by the parties' own accounts, there is no Pennsylvania Supreme Court decision on point, this court is charged with predicting how that court would decide this case. Berrier, 563 F.3d at 45-46.  Although not dispositive, decisions from Pennsylvania's Superior and Commonwealth Courts are particularly instructive in determining how the Pennsylvania Supreme Court might decide this issue, and can be considered presumptive evidence of state law. McGowan, 759 F.2d at 291.  The most recent Pennsylvania appellate decision of any precedential authority[3] that addresses the question before this court is Glikman, which was

---

[3] The Pennsylvania Superior Court's decision in Lipsky is unpublished, and not precedential. Lipsky v. State Farm Mut. Auto. Ins. Co., No. 565 EDA 2010, 2011 WL 11745706 (Pa. Super. Ct. 2011); Pa. Super. Ct. Inter. Op. Proc. 65.37.  The Pennsylvania Supreme Court affirmed, but without opinion and only by operation of law, because the votes among eligible justices were equally divided. Lipsky v. State Farm Mut. Ins. Co., 84 A.3d 1056 (Pa. 2014).

decided by the Pennsylvania Superior Court in 2007. The court's reasoning in that case, and in particular, the manner in which it distinguishes its prior decision in Zerr, directs that this court predict that the Pennsylvania Supreme Court would conclude that the Kahan Actions do assert claims that "might or might not" fall within the Policy's definition of the term "bodily injury," thus triggering the Policy's Family Liability Protection. Cadwallader, 152 A.2d at 488; Am. & Foreign Ins., 2 A.3d at 541.

    In both Zerr and Glickman, the insured suffered from post-traumatic stress disorder ("PTSD") as a result of a car accident in which the insured suffered no physical injuries. In Zerr the Superior Court of Pennsylvania found that PTSD did not fall within the policy's definition of "bodily injury" and did not trigger coverage. Zerr, 667 A.2d at 238. In Glikman, the Superior Court of Pennsylvania found that PTSD did fall within the policy's definition of the term "bodily injury" and did trigger coverage. Glikman, 917 A.2d at 873-74. The Superior Court explained that its holding in Glikman differed from its seemingly contradictory holding in Zerr, but did not overrule it, because the policy language at issue in each case was dispositively different. Id. In Zerr, the insurance policy defined the term **"bodily injury"** as "accidental bodily harm to a person and that person's **resulting illness, disease**, or death." Id. (citing Zerr, 667 A.2d at 238) (emphasis added). By comparison, in Glikman, the insurance policy defined the term **"bodily injury"** as "bodily harm, **sickness, or disease,** including death that results from bodily harm, sickness or disease." Glikman, 917 A2d at 873 (emphasis added). The Pennsylvania Superior Court explained that where "'[d]isease' is a separately identified 'bodily

injury' in the policy," allegations in the underlying complaint that the insured suffered from a condition that the parties agreed qualified as a "disease" triggered coverage.[4] Id. at 873.

As will be demonstrated by the court's review of Pennsylvania case law below, the distinction in lexicography, although subtle, is determinative:

- Where an insurance policy defines the term "bodily injury" as physical harm and any sickness, illness, or disease that *results from* that physical harm, allegations that a victim suffered some condition as the result of mental or emotional distress do not trigger coverage (referred to herein as "resulting disease"). Where the term "bodily injury" is defined to require a resulting disease, a physical harm or injury of some kind is a prerequisite to recovery for any illness, sickness, or disease that subsequently develops. It follows that a sickness or disease that results from a mental injury cannot qualify, because a mental injury cannot satisfy the prerequisite that a physical injury be suffered first.

- Where an insurance policy lists sickness, illness, or disease as among several, separable kinds of "bodily injury," illnesses, sicknesses, or diseases can constitute "bodily injury," even if the insured suffered no physical harm or injury first (referred to herein as "independent disease"). Where the term "bodily injury" is defined to include independent diseases, coverage is triggered if an ailment or condition that qualifies as a sickness, illness, or disease results from an incident, to the same extent as if a bruise, cut, or broken bone results from an incident. Because a physical harm is not required to trigger coverage, conditions caused by mental distress can qualify as "bodily injury."

Even the case law relied upon by Allstate recognizes that the precise language used in a policy creates this critical distinction in the scope of coverage. In her dissent in Lipsky, which Allstate contends this court should follow, Judge Ford-Elliott explains that coverage was

---

[4] Although the insurance company conceded, in Glikman, that PTSD was a "disease," and that the "disease" caused the insured's "suffering," and presumably that the PTSD was caused by the accident, these concessions are not material to the question to be decided by this court. To resolve the cross-motions for summary judgment, this court must only determine whether the Kahan Actions allege claims that might fall within the Policy's definition of the term "bodily injury." Am. & Foreign Ins., 2 A.3d at 541. The duty to defend is triggered at a low threshold, and applies until the insurer can establish definitively that there is no coverage.

triggered in <u>Glikman</u>, but not in <u>Zerr</u>, because "[t]he policy in <u>Glikman</u>… coined 'bodily injury' much more broadly than the <u>Zerr</u> policy" by using the "disjunctive 'or'… [to delineate] four separate and distinct types of 'bodily injury': bodily harm, sickness, disease and/or death." <u>Lipsky</u>, 2011 WL 11745706, at *12 n.2.  In other words, the policy at issue in <u>Glikman</u> was a broader policy that defined the term "bodily injury" to include independent diseases, and placed sickness and disease on equal footing with physical harm to the body.  In contrast, the insurance policies at issue in <u>Lipsky</u>, and in each of the three decisions Judge Ford-Elliott considered to be controlling in her dissent, i.e., <u>Zerr</u>, <u>Jackson v. Travelers Ins. Co.</u>, 606 A.2d 1384 (Pa. Super. Ct. 1992), and <u>Needleman v. Liberty Mut. Fire Ins. Co.</u>, 507 A.2d 1233 (Pa. Super. Ct. 1986), were narrower policies that defined the term "bodily injury" to require a resulting disease, under which physical harm is a prerequisite to coverage for any sickness or disease. <u>Lipsky</u>, 2011 WL 11745706 at *11-12.

Allstate relies upon the same decisions cited by Judge Ford-Elliott, i.e., <u>Zerr</u>, <u>Jackson</u>, and <u>Needleman</u>, to support its argument that a covered claim is not asserted in either Kahan Action.  Allstate's argument is fundamentally flawed, however, because the Pennsylvania Superior Court recognizes that policies that provide narrower coverage by defining the term "bodily injury" to require a resulting disease provide a different scope of coverage than do broader policies that define the term "bodily injury" to include independent diseases. <u>Glikman</u>, 917 A.2d at 873-74; <u>see</u> <u>also</u> <u>Lipsky</u>, 2011 WL 11745706, at *12 n.2 (Ford-Elliott, dissenting). Under <u>Glikman</u>, which this court considers to be presumptive evidence of Pennsylvania law, decisions, such as <u>Zerr</u>, <u>Jackson</u>, and <u>Needleman</u>, which interpret policies that define the term "bodily injury" to require a resulting disease, are inconsequential to the question before this court

because the Winslows' Policy defines the term "bodily injury" to include independent diseases.[5]
Accord, Lipsky, 2011 WL 11745706, at *12 n.2 (Ford-Elliott, dissenting); State Farm Mut. Auto.
Ins. Co. v. Moschetta, No. GD 2007-10724, 2008 WL 7293771 (Pa. Com. Pl. Aug. 28, 2008)
(relying on Zerr, Needleman, and Jackson to interpret a policy that defined the term "bodily
injury" to require a resulting disease, and noting that a different result was reached in Glikman
because the policy language was "clearly distinguishable").  In Pennsylvania, it is the language of
the insurance contract that controls, and in this instance, the differing definitions of "bodily
injury" create differing coverage determinations. Meyer, 648 F.3d at 163.

       Although Allstate in its briefing does rely upon decisions that interpret insurance
policies that define the term "bodily injury" to include independent diseases, like the Winslows'
Policy does, these decisions likewise fail to assist this court in predicting how the Pennsylvania
Supreme Court would resolve the question presented, for various reasons. (ECF No. 19 at 6-7;
ECF No. 37 at 4 (citing The Phila. Contributionship Insur. Co. v. Shapiro, 798 A.2d 781, 787
(Pa. Super. Ct. 2002); Nationwide Mut. Ins. Co. v. Garzone, Nos. 07-4767 & 08-3896, 2009 WL
2996468, at *20 (E.D. Pa. Sep. 17, 2009); Coregis Ins. Co. v. City of Harrisburg, 401 F.Supp.2d
398, 404-06 (M.D. Pa. 2005); Miller v. Quincy Mut. Fire Ins. Co., No. 03-1328, 2003 WL
23469293, at *3-4 (E.D. Pa. Dec. 4, 2003); Legion Indem Co. v. CareState Ambulance, Inc., 152

---

[5] Because policy language is critical to a coverage determination, Allstate's reliance on
Terrafranca, is without consequence.  In that case a passenger on an international flight sought to
recover for the emotional trauma caused by being notified of a bomb threat while on board.
Terrafranca v. Virgin Atl. Airways Ltd., 151 F.3d 108, 109 (3d Cir. 1998).  The court of appeals
interpreted the term "bodily injury" as set forth, but not defined, in the text of the Warsaw
Convention, to preclude recovery for "purely psychic injury" and subsequent manifestations of
the same.  The court of appeals' analysis was based, in large part, upon the Supreme Court
interpreted an analogous French term, "lesion corporelle." Id. at 110.  The decision does
not involve an insurance policy, or other contract, that defines the term "bodily injury," and does not
inform the court with respect to answering the question presented.

F.Supp.2d 707, 718-19 (E.D. Pa. 2001); Allstate Ins. Co. v. Montalbano, No. 00-3955, 2001 WL 876793, at *2-3 (E.D. Pa. May 17, 2001)).)

As an initial matter, all decisions, with the exception of Shapiro, were issued by federal district courts. Although this court may consider federal court decisions in predicting how the Pennsylvania Supreme Court would decide an issue, decisions from Pennsylvania's intermediate appellate courts are more significant in that regard. McGowan, 759 F.2d at 291; Norfolk S. Ry., 512 F.3d at 92. This court determined above that Glikman is presumptive evidence of Pennsylvania law on this issue, as confirmed by Judge Ford-Elliott's reasoning in her recent dissent in Lipsky. Although Shapiro was issued by a Pennsylvania appellate court, that decision, as explained below, is readily distinguishable.

Each decision relied upon by Allstate, with the exception of Legion, can be distinguished on its facts because the underlying complaints sought relief only for mental anguish, emotional distress, humiliation, or pain and suffering. As such, these decisions do not assist this court in predicting how the Pennsylvania Supreme Court would decide whether coverage is triggered when an underlying complaint alleges that a victim developed physical ailments and symptoms as a result of mental or emotional trauma, where a policy defines the term "bodily injury" to include independent diseases. In Shapiro, for instance, the underlying complaint sought recovery for only "mental anguish and humiliation," and made no allegation that any physical condition or symptom was suffered as a result of being fired. Shapiro, 798 A.2d at 787. Coverage was not triggered under the circumstances, even though "bodily injury" was broadly defined to include independent diseases. Id. Similarly, in Garzone, the district court found no coverage based upon bodily injuries to exist because the underlying plaintiffs sought to recover only for emotional distress. Garzone, 2009 WL 2996468, at *16. The district court

distinguished <u>Glikman</u>, even though both policies defined the term "bodily injury" to include independent diseases, because the underlying complaint in <u>Garzone</u> did not allege that a victim "developed post-traumatic stress disorder or a similar condition as a result of" the insured's conduct. <u>Id.</u> at *17. In <u>Coregis</u>, the district court found that a complaint alleging "emotional harm" could not trigger coverage even where the term "bodily injury" was broadly defined to include independent diseases. <u>Coregis</u>, 401 F.Supp.2d at 404-06; <u>accord</u>, <u>Miller</u>, 2003 WL 23469293, at *3-4 (coverage was not triggered because the underlying complaint alleged only embarrassment, humiliation, and psychological harm; policy defined the term "bodily injury" to include independent diseases); <u>Montalbano</u>, 2001 WL 876793, at *2-3 (coverage was not triggered because the underlying lawsuit asserted claims only for emotional distress; policy defined the term "bodily injury" to include independent diseases).

These decisions, which Allstate cites to support its contention that the Kahan Actions cannot trigger coverage, do no more than restate and apply the generally-accepted, and undisputed, principle of Pennsylvania law that claims for purely emotional distress do not trigger coverage for bodily injuries, regardless of how the policy defines the term "bodily injury." (ECF No. 33 at 4 n.3.); <u>Zerr</u>, 667 A.2d at 238 (finding that emotional distress does not trigger coverage under a policy defining the term "bodily injury" to require a resulting disease); <u>Nance v. The Phoenix Ins. Co</u>, 118 F.App'x 640, 642 (3d Cir. 2004) (finding that emotional distress does not trigger coverage under a policy defining the term "bodily injury" to include independent diseases). In the instant case, however, the Kahan Actions include claims that go beyond allegations of mental anguish, emotional distress, humiliation, or pain and suffering. Kahan alleges that he suffered a migraine condition that required medication, abdominal pains, and

irritable bowel syndrome as a result of the Winslows' alleged misconduct.[6]  Because of this

critical factual distinction, decisions such as Garzone, Coregis, Miller, Shapiro, and Montalbano

do not mandate that this court enter a declaratory judgment that neither the duty to defend, nor

the duty to indemnify, is triggered by the Kahan Actions, as Allstate contends.

        Several of these same decisions, in fact, support this court's conclusion that the

Kahan Actions trigger Allstate's duty to defend.  The district court in Miller, for example, found

that coverage for bodily injuries was not triggered because the underlying action alleged "only

emotional harm," and "[n]owhere… allege[d] physical harm from the assault and battery, or

physical harm as a manifestation of her psychological injuries." Miller, 2003 WL 23469293, at

*3.  This language in Miller indicates that physical harms, including those that originate from

psychological injuries, could trigger coverage under a policy that defines the term "bodily

injury" to include independent diseases.  These are precisely the harms that Kahan alleges he

suffered in Counts XII and XIV of the Federal Court Action, and in the Butler County Action,

i.e., a migraine headache condition requiring medication, abdominal pains, and irritable bowel

syndrome, as a result of the stress caused by the Winslows' alleged misconduct.  The district

court's analysis in Coregis confirms that such conditions can qualify as "bodily injury" under the

policy language at issue in this case. Coregis, 401 F.Supp.2d at 404-05.  In that decision, the

district court refused to consider deposition testimony that the victim suffered "high blood

pressure, loss of appetite, headaches, stomach problems, hearing loss, and "other physical

---

[6] For purposes of clarity, the court does not consider Kahan's conclusory allegations that he suffered "bodily injuries" to be relevant to the instant coverage dispute. Those allegations are akin to pleading the ultimate legal conclusion that the asserted claims fall within the terms of the operative insurance policy.  Although this court must accept the factual allegations of Kahan's complaints as true, the court need not accept legally conclusory statements. Garzone, 2009 WL 2996468, at *10.  In order to prevent artful pleading, it is necessary for this court to look at the factual allegations of the complaint, not how the underlying plaintiff frames the request for relief. Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

ailments" as a result of his mental distress. Id. at 404 n.6. The court held that coverage could not be triggered by these allegations because they were not made in the complaint, which is the operative document for determining coverage. Id. at 404-05 & n.6. The court did not hold that those averments could never fall within the meaning of the term "bodily injury," where the term is defined to include independent diseases, and the court's commentary on the procedural defect in the pleading indicates to the contrary. Id. In contrast, the complaints in the Kahan Actions include Kahan's allegations about the physical ailments he suffered as a result of the Winslows' alleged misconduct.[7] In summary, the decisions relied upon by Allstate to support its argument that coverage is not triggered because physical manifestations of emotional distress can never qualify as bodily injury under Pennsylvania law are factually distinguishable, or actually support the Winslows' argument that coverage is triggered in this case.

This court acknowledges, however, that some of the decisions cited by Allstate, and other Pennsylvania case law, include language indicating that it is a generally-accepted principle of Pennsylvania law that coverage cannot be triggered by allegations that a victim suffered the physical manifestation of emotional distress under a policy insuring against claims brought for bodily injuries. See, e.g., Garzone, 2009 WL 2996468, at *16; Montalbano, 2001 WL 8766793, at *2-3; see also Babalola v. Donegal Grp., Inc., No. 08-621, 2008 WL 4006721, at *3 (M.D. Pa. Aug. 26, 2008). The decisions that state that this is a generally-accepted principle of Pennsylvania law primarily rely upon Zerr and Legion.

---

[7] In a recent district court decision, not cited by Allstate, the court, citing Glikman, recognized that allegations about "permanent psychological injuries… raise the possibility of a diagnosed or diagnosable psychiatric disorder" which "can be a 'disease'" where the term "bodily injury" is defined to include independent diseases. Becker v. Farmington Cas. Co., No. 08-2228, 2010 WL 2898810, at *3 n.7 (M.D. Pa. Jul. 22, 2010).

As set forth above, however, <u>Zerr</u> is distinguishable because it interpreted a policy under which coverage for bodily injury could not be triggered unless there was, first, a physical harm to the body. <u>Zerr</u>, 667 A.2d at 238. Under policies that define the term "bodily injury" to require that illness or disease result from a physical harm it is correct to state that physical manifestations of mental or emotional harm cannot trigger bodily injury coverage; under this definition of the term "bodily injury" there is no coverage for a sickness, illness, or disease unless there is, first, a physical injury. In contrast, it is incorrect to make this statement about policies that define the term "bodily injury" more broadly to include disease and sickness independent from physical harms; under this definition of the term "bodily injury" a preceding physical injury is not required in order for coverage to be triggered for sickness, illness, and disease. <u>See</u> <u>Glikman</u>; <u>Lipsky</u> (J. Ford-Elliott (dissenting)); <u>Coregis</u>; <u>Miller</u>.

<u>Legion</u>, however, is not distinguishable based upon the policy's definition of "bodily injury." <u>Legion</u> involved a policy that defined the term "bodily injury" broadly, to include independent diseases, as does the Winslows' Policy. The district court, however, held that a sickness, illness, or disease originating from a mental or emotional harm could not trigger coverage. <u>Legion</u>, 152 F.Supp.2d at 718-19. Several anomalies on the face of the district court's decision, however, prevent this court from affording it significant weight. Even setting aside these anomalies, <u>Legion</u> is not controlling precedent to this court and was decided six years before <u>Glikman</u>.

The underlying complaint in <u>Legion</u> included allegations that the insured suffered difficulty sleeping, hyperventilating, and a skin condition as a result of watching her husband die due to an ambulance service's alleged negligence. <u>Legion</u>, 152 F.Supp.2d at 718-19. The court found that the insured did not "sustain any 'bodily injury'" because her physical symptoms

"resulted solely from her mental state." Id.  In reaching this conclusion, the district court noted that "both parties agree that to trigger coverage… the plaintiff in an underlying case must allege that some physical injury resulted" from the incident. Id.  Even though Legion involved a policy that defined the term "bodily injury" to include independent diseases the parties inexplicably agreed that a prior physical injury was a prerequisite to coverage for any other physical symptoms.  As explained elsewhere in this opinion, a prior physical injury is a prerequisite to coverage where the policy narrowly defines the term "bodily injury" as physical harm and any resulting illness, sickness, or disease. See Glikman, 917 A.2d at 873-74; Lipsky, 2011 WL 11745706, at *12 n.2 (J. Ford-Elliott, dissenting).  A prior physical injury is not required where the policy defines the term "bodily injury" as, not only physical harm, but also illness, sickness, or disease, as did the policy in Legion and as does the Winslows' Policy.

The confusion in Legion is compounded by the court's further statement that "[t]he definition of 'bodily injury' in the insurance policy at issue in Zerr is not materially different from the definition in the Legion policy." Legion, 152 F.Supp.2d at 719 n.8.  The policy at issue in Legion defined the term "bodily injury" to include independent diseases, while the policy in Zerr defined the term "bodily injury" to require that any disease result from a physical harm.  Under the Pennsylvania Superior Court's reasoning in Glikman, the language of the policies at issue in Zerr and Legion is materially and dispositively different under Pennsylvania law.  Given that the parties inexplicably conceded that a physical injury was a prerequisite to coverage under a policy that defined the term "bodily injury" to include independent diseases, that the district court failed to recognize the critical distinction in policy language, and that Legion was decided years before Glikman, this court will afford little weight to Legion or to those decisions which rely upon it to support the allegedly, generally-accepted principle of

Pennsylvania law that insurance coverage for bodily injury cannot be triggered by allegations that a victim suffered the physical manifestation of emotional distress.

This court predicts that the Supreme Court of Pennsylvania would not summarily deny coverage on the basis of decisions that state this purportedly generally-accepted rule of law. This court predicts that the Pennsylvania Supreme Court would examine the exact language of the Policy (which defines the term "bodily injury" to include independent diseases) and the allegations made in the underlying complaints (which assert that Kahan suffered a migraine condition that required medication, abdominal pains, and irritable bowel syndrome as a result of the Winslows' alleged misconduct), Meyer, 648 F.3d at 163, apply the reasoning set forth in Glikman, and conclude that the Kahan Actions assert claims that might be covered under the Policy, thus triggering Allstate's duty to defend.

This court does not find Allstate's public policy-based arguments convincing. (ECF No. 19 at 14-15; ECF No. 37 at 5-6.) Allstate, as the drafter of the Policy, could have offered the Winslows a narrower policy that defined the term "bodily injury" to require a prerequisite physical injury before coverage would be provided for resulting illness, sickness, or disease. It did not. Under Pennsylvania law, this court must give effect to the plain language of the policy, and the reasonable expectations of the Winslows, and ensure that Allstate does not unilaterally change the terms of the Policy. Millers, 941 A.2d at 717; Moss Signs, 2008 WL 892032, at *2. The Winslows are entitled to rely upon Allstate's decision to provide broader coverage by defining the term "bodily injury" to include sicknesses and diseases without requiring that they result from a prior physical harm or injury.

To be clear, this court finds only that Kahan asserts claims in both the Federal Court Action and the Butler County Action that might fall within the Policy's coverage because he contends that the Winslows' alleged misconduct caused him to suffer physical ailments, i.e., migraine headaches requiring medication, abdominal pains, and irritable bowel syndrome. Contrary to Allstate's arguments, these ailments go beyond allegations of pure mental or emotional harm. Therefore, the rule that allegations of purely mental harm can never trigger coverage under a policy insuring against bodily injury claims does not apply. Also contrary to Allstate's arguments, coverage cannot be denied based upon any purported generally-applicable rule of law in Pennsylvania that physical manifestations of mental or emotional harm can never trigger coverage under a policy providing coverage for bodily injury claims. Although there is language in some decisions to this effect, those decisions are not controlling, are distinguishable on their facts, and contradict the approach taken to this issue by the Pennsylvania Superior Court in <u>Glikman</u>. Pennsylvania case law indicates that the Pennsylvania Supreme Court would consider the language of the Policy and would conclude that the Kahan Actions trigger the duty to defend because the term "bodily injury" is defined as physical harm to the body, including sickness or disease, and resulting death. The Winslows met their burden to establish coverage. The duty to defend is therefore triggered and remains in place until Allstate can prove otherwise, on whatever ground.

Having found that the duty to defend is triggered, the court must address Allstate's motion to strike portions of the Winslows' motion for summary judgment. (ECF No. 29.) Specifically, Allstate contends that the Winslows cannot be awarded reimbursement of defense costs incurred to date because they did not request such reimbursement in their answer to Allstate's declaratory judgment complaint, by way of counterclaim, or otherwise. (ECF No. 30 at

2.)   The Winslows argue that Allstate's motion "ignores basic principles of insurance contract law and belies the interests of judicial economy." (ECF No. 39 at 2.)  According to the Winslows, if this court imposes a duty to defend on Allstate, but does not require Allstate to pay their defense costs, "the defense provision of [Allstate's] insurance contract [would be rendered] meaningless." (Id. at 3.)  Allstate acknowledges that the only disputed issue in this case is whether Allstate owes the Winslows a duty to defend and indemnify the Kahan Actions. (ECF No. 30 at 4.)  Under Pennsylvania law, payment of defense costs, past and future, follows necessarily from a finding that the duty to defend exists.  Allstate's motion to strike will be denied.

An insurer who refuses to defend its insured from the outset does so at its peril. Aetna Cas. and Sur. Co. v. Roe, 650 A.2d 94, 99 (Pa. Super. Ct. 1994); Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953 (Pa. Super. Ct. 1992).  When an insurer erroneously denies its duty to defend, fulfillment of the duty requires the insurer to pay for any defense costs already incurred. Kiewit Eastern Co., Inc. v. L & R Const. Co., Inc., 44 F.3d 1194, 1205 (3d Cir. 1995); Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc., 858 F.2d 128, 131 n.2 (3d Cir.1988) ("[i]f an insurer has a duty to defend a suit and is requested to provide a defense, then that insurer is clearly obligated to pay fees and costs incurred by the insured in defending the suit," including reimbursing the insured for fees and costs already paid); Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of New York, 281 F.2d 538, 542 (3d Cir. 1960) (same); Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 76 (3d Cir. 1985) (failure to provide a defense pursuant to a policy of insurance causes the insurer to become liable to the insured for the costs incurred in securing an alternative defense against the claims); King v. Auto. Underwriters, Inc., 187 A.2d 584, 609 (Pa. 1963) (Pennsylvania law recognizes that when

an insurer breaches its duty to defend, the appropriate measure of recovery is the cost of hiring substitute counsel and other defense costs).

Although the Winslows did not specifically request in their responsive pleading that they be reimbursed for defense and indemnity costs incurred to date, they did ask this court to declare that each Winslow is entitled to a defense and indemnity. (ECF No. 8 at 7, 8, 11.)  As reflected in the case law set forth above, a finding that Allstate's duty to defend is triggered entitles the Winslows to payment of their defense costs, regardless of when they were incurred.

Even if Pennsylvania law was not clear on this point, this court would allow the Winslows to amend their responsive pleading at this juncture to include a specific claim for reimbursement.  Unless there is evidence of undue delay, bad faith, dilatory motive, repeated failure to cure, futility, or undue prejudice to the opposing party, leave to amend should be freely given when justice so requires. Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2).  This court is aware of no basis on which to find that the Winslows failed to make a specific assertion for reimbursement in their prior filings in order to delay the case, or due to bad faith or dilatory motive.  Allstate cannot reasonably contend that it is prejudiced by allowing such a claim to be made now.  It would be incredulous for Allstate to assert that it was not on notice that it would be obligated to pay the Winslows for their defense costs if the duty to defend was triggered.[8]  Requiring the Winslows to file a separate breach of contract action to recover the

---

[8] Were Allstate to contend that its complaint sought only this court's theoretical interpretation of the Policy's duty to defend provision, and that it had no awareness that there would be any resultant monetary consequence, this court's jurisdiction under the Declaratory Judgment Act ("DJA") could be called into question.  Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66, 580 F.3d 185, 190-91 (3d Cir. 2009) (noting that federal courts are not empowered, pursuant to the DJA to issue advisory opinions).

defense costs that they incurred to date would be counter to the interest in judicial efficiency, and serve no just purpose.

The court makes no ultimate finding with respect to the duty to indemnify at this juncture. Although a conditional duty to indemnify arises from the duty to defend, and although Allstate could not refuse to indemnify the Winslows if they were, in fact, found liable for causing Kahan to suffer a disease or sickness, as alleged, many factual matters await ultimate determination in the Kahan Actions. A final decision cannot be made as a matter of law on the duty to indemnify at this time, and could not be made, in any event, unless and until the Winslows are found to be liable to Kahan on any claim asserted in the Kahan Actions. The court will administratively close this case, but it may be reopened at any time if a justiciable issue arises for this court's determination.

## IV.    CONCLUSION

For the reasons set forth above, the Winslows' motion for summary judgment, (ECF No. 22), is granted, in part. Judgment shall be entered, as a matter of law, that Allstate's duty to defend the Winslows against the Kahan Actions is triggered. A conditional duty to indemnify arises as well. The motion is denied, without prejudice, in all other respects. Allstate's motion for summary judgment, (ECF No. 18), and motion to strike, (ECF No. 29), are denied.

An appropriate order and judgment will be entered contemporaneously with this opinion.

Date: December 15, 2014                                    BY THE COURT:


                                                            /s/ *Joy Flowers Conti*
                                                            Joy Flowers Conti
                                                            Chief United States District Judge